IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:06-cr-09 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **Order Denying Motion for** |
| Markeith Turner, | : | **Compassionate Release** |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Markeith Turner's Motion for Compassionate Release and Supplemental Motion for Compassionate Release. (Docs. 172, 182.) The Government responded in opposition. (Doc. 183.) For the reasons that follow, Turner's Motion will be **DENIED**.

I.     BACKGROUND

On January 18, 2006, Turner was indicted on the following charges: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (3) being a felon in possession of a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4); (4) possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; (5) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. §2; (6) being a fugitive in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2); (7) being a fugitive in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2); (8) being a person under indictment in possession of a firearm, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D); (9) being a person under indictment in possession of ammunition, in violation of

18 U.S.C. §§ 922(n) and 924(a)(1)(D); and (10) carrying and discharging a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (iii). (Doc. 20.)

Following a jury trial, on April 10, 2006, Turner was convicted on Counts 1–3 and 5–10 and acquitted on Count 4. (Doc. 56.) On May 4, 2006, the Court granted a motion for judgment of acquittal on Counts 6 and 7. (Doc. 59.) On April 11, 2007, the Court held a Sentencing Hearing and sentenced Turner to 382 months of imprisonment.[1] (Doc. 75.) On March 19, 2010, the Sixth Circuit reversed Turner's conviction on Counts 1 and 2 due to Speedy Trial Act violations, affirmed the remaining five convictions, and remanded the case for resentencing. *United States v. Turner*, 602 F.3d 778, 781 (6th Cir. 2010). The Court held a Resentencing Hearing on July 6, 2010, at which it resentenced Turner on Counts 3, 5, 8, 9, and 10 of the Indictment to a total of 382 months of imprisonment.[2] (Doc. 117, 118.) On September 1, 2011, the Sixth Circuit affirmed the district court's decision to deny Turner's motion to dismiss the five remaining counts of conviction. *United States v. Turner*, 436 F. App'x 599, 599 (6th Cir. 2011). Turner is currently serving his sentence at USP Allenwood, and his projected release date is June 11, 2034. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed October 19, 2022).

Turner filed a pro se Motion for Compassionate Release on August 5, 2021. (Doc. 172.) Thereafter, he was appointed counsel pursuant to S.D. of Ohio Amended General Order 20-21. (Doc. 174.) Turner's attorney filed a Supplemental Motion for Compassionate Release on

---

[1] The Honorable Sandra S. Beckwith presided over Turner's trial, Sentencing Hearing, and Resentencing Hearing. The case was later reassigned to the undersigned. (*See* Doc. 157.)

[2] Turner was sentenced to 23 months of imprisonment on Count 3, to run consecutively to the sentence imposed on Counts 5, 8 and 9; 239 months of imprisonment on Count 5, to run concurrently with the sentence imposed in Counts 8 and 9; 120 months of imprisonment on Counts 8 and 9, to run concurrently to the sentence imposed on Count 5; and 120 months of imprisonment on Count 10 to run consecutively to sentences imposed on Counts 3, 5, 8 and 9; a term of supervised release; a $500 special assessment, and a $15,000 fine. (*Id.*)

September 9, 2022.³ (Doc. 182.) The Government responded in opposition on September 21, 2022. (Doc. 183.) For the reasons that follow, Turner's Motion will be denied.

## II. STANDARD OF LAW

Turner seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking a sentence reduction bears the burden of proof. *Id*. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—

---

³ The Court is aware of the delay between when Turner's pro se Motion for Compassionate Release was filed and when his attorney filed a Supplemental Motion for Compassionate Release. Due to the delay, the Court ordered Turner's attorney to file a supplement or brief explaining why a supplement is not necessary. (*See* Doc. 180.) Turner's attorney filed the necessary supplement, which now has been considered by the Court. As the Court finds Turner's Motion for Compassionate Release is without merit, the delay did not prejudice the Defendant.

> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

After enactment of the First Step Act of 2019, the text of 18 U.S.C. § 3582(c)(1)(A) now makes clear that a defendant can bring a compassionate release motion on his or her own behalf after the defendant either fully exhausts any administrative remedies or waits 30 days from the date his or her warden receives his or her request for release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Exhaustion of administrative remedies is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). As such, the rule only binds the Court if properly asserted and not forfeited. *Id*. at 833. This claim-processing rule "serves important purposes" including that "prison administrators can prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.* at 835.

If a defendant has exhausted administrative remedies, the district court must then (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108–09 (6th Cir. 2020).[4] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)) (alteration in original). Courts generally have

---

[4] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id*. at 1111; *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

discretion to define what constitutes "extraordinary and compelling" reasons. *Id*. at 562. Nonetheless, the Sixth Circuit defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id*.; *United States v. McKinnie*, 24 F.4th 583, 586–90 (6th Cir. Jan. 26, 2022) (citing *Hunter*).[5]

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of their weighing the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 564; *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

Based on the evidence submitted to the Court, it is unclear whether Turner exhausted his administrative remedies. On July 15, 2021, "A. Ciolli, Warden" signed an "Inmate Request to

---

[5] *But see United States v. Owens*, 996 F.3d 755, 763–64 (6th Cir. 2021); *United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021), *rehearing en banc granted, vacated*, No. 21-3400, 29 F.4th 816 (6th Cir. April 1, 2022).

Staff Member Response" form, which stated that in response to Turner's Inmate Request to Staff regarding a Compassionate Release/Reduction in Sentence, "we will not be pursuing a request for compassionate release on your behalf." (Doc. 182-1 at PageID 1620.) Turner filed his Motion for Compassionate Release on August 5, 2021. (Doc. 172.) It is unclear on what date Turner submitted his Request form for consideration to the Warden and whether that date was thirty days prior to his filing for compassionate release with this Court. Given the delays in this case and the fact that the Government did not raise a failure to exhaust argument, the Court will nonetheless address the Motion on its merits.[6]

### B. No Extraordinary and Compelling Reason for Release

Even if considered on the merits, Turner has not met his burden to demonstrate an extraordinary and compelling reason for his release. Turner argues that his risk of severe illness from COVID-19 due to his age and medical conditions, along with having served half of his sentence with no disciplinary issues, merit his early release. The Court finds that these reasons do not rise to an extraordinary and compelling reason for Turner's release.

Turner is forty-nine years old and asserts he suffers from asthma, "abnormal liver," leukopenia (low white blood cell count), and two prior COVID-19 infections, from which he has recovered.[7] (*See* Doc. 182-1 at PageID 1621–23.) Turner does not have particularly serious medical conditions, and his age is not identified by the Centers for Disease Control and

---

[6] As exhaustion of administrative remedies is a claim-processing rule as opposed to a jurisdictional one, it binds the Court only if properly asserted. *Alam*, 960 F.3d 831 at 833.

[7] Turner submitted three pages of medical records which have limited information. The Court did not locate diagnostic information about an "abnormal liver." Based on notes from a clinical encounter on September 2, 2021, Turner has a history of asthma, and the condition is managed by inhaler use. The severity of the condition is unclear. (Doc. 182-1 at PageID 1621.) The same clinical encounter references a "[h]istory of leukopenia" but also notes that Turner refused to have his labs done, though his "medical record indicate[s] [he] had a white blood cell count of 2.8 with a normal differential and normal hemoglobin, hematocrit, and platelet count which was done last year." (*Id*.) Turner's medical records also reveal he had confirmed cases of COVID-19 on May 5, 2022 and December 4, 2020. (*Id*. at PageID 1623.) The status of each of those COVID-19 diagnoses is listed as "resolved." (*Id*.)

6

Prevention ("CDC") as that of an "older adult,"[8] which may increase the risk of severe illness from COVID-19.  CDC, "COVID-19 Risks and Vaccine Information for Older Adults," https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last accessed 10/20/2022).  The CDC identifies liver disease and chronic lung disease as conditions that increase one's risk of severe illness from COVID-19.  CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed 10/20/2022).  Chronic lung disease is defined as including moderate to severe asthma, but the Court has no knowledge about the severity of Turner's asthma.  Turner does not offer any support for his speculation that his prior COVID-19 infections, from which he has recovered, increase his risk of serious illness in the future.

Regardless, although Turner's alleged conditions are not insignificant, they fail to rise to the rare and extraordinary level sufficient to warrant compassionate release.  *Compare United States v. Maxwell*, 567 F. Supp. 3d 824, 831–32 (S.D. Ohio 2021) (finding extraordinary and compelling reason where defendant suffered two "life-altering medical events" that left him unable to care for himself); *and United States v. Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (finding extraordinary and compelling reason where defendant suffered from a long list of severe medical conditions, some of which were non-recoverable and rendered defendant non-ambulatory); *with United States v. Jenkins-Mills*, No. 3:17-CR-00025-TMKR-MRM-2, 2020 WL 6146418, at *4 (S.D. Ohio Oct. 20, 2020) (finding no extraordinary and compelling reason for compassionate release of 30-year-old defendant with medical conditions of obesity and hypertension).  Defendant's asserted medical conditions simply do not rise to the same rare and

---

[8] The CDC cautions that the risk of getting very sick from COVID-19 increases for people in their 50s and increases in 60s, 70s, and 80s, with those aged 85 years and older most likely to get very sick.  CDC, "COVID-19 Risks and Vaccine Information for Older Adults," https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last accessed 10/20/2022).

extraordinary level as other instances of more severe and extreme medical circumstances which merited compassionate release during the height of the COVID-19 pandemic.

In addition, compassionate release motions based upon the risk of contracting COVID-19 are now routinely denied in this Circuit where the inmate has access to the COVID-19 vaccine. "Prior to the development of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the [CDC] . . . to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19." *United States v. Coleman*, No. 15-20624, 2022 WL 1026542, at *2 (E.D. Mich. Apr. 6, 2022). Yet following the development of COVID-19 vaccines, the proper inquiry for a district court is now whether the defendant has access to a COVID-19 vaccine. "A defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citation omitted); *see also United States v. Inman*, No. 3:20-cv-00154, 2022 WL 304660, at *4 (M.D. Tenn. Feb. 1, 2022) ("[G]iven the wide availability of the COVID-19 vaccine, *Lemons* forecloses a substantial portion of inmates' arguments that their underlying health conditions combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for release.").

The Court has no information about whether Turner has received a COVID-19 vaccine. However, there is good reason to conclude he has access to the COVID-19 vaccine. According to the Bureau of Prisons ("BOP"), "[v]accine doses are available at each [BOP] location for newly-admitted and existing inmates[,]" and "[i]nmates have also been offered booster shots in accordance with CDC guidance." Federal Bureau of Prisons, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last accessed 10/20/2022) (emphasis removed). As of

October 20, 2022, the BOP reports that it has received 376,145 doses of the COVID-19 vaccine and administered 332,149 of those doses. *Id.* Further, according to statistics provided by the BOP, as of October 20, 2022, USP Allenwood has no active COVID-19 cases. (*Id.*) One inmate COVID-19-related death has been reported at the facility since the start of the pandemic. (*Id.*) Thus, the COVID-19 pandemic appears to be well-managed at his facility at this time.[9]

For these reasons, Turner's fear of contracting and suffering severe illness from COVID-19 is not a compelling and extraordinary reason justifying compassionate release. Accordingly, the Court finds that no extraordinary and compelling reason exists for his release.

### C. 18 U.S.C. § 3353(a) Factors Do Not Support Early Release

Even if Turner had demonstrated an extraordinary and compelling reason, the sentencing factors do not support early release. Among the 18 U.S.C. § 3553(a) factors to be considered are the nature and characteristics of the defendant's offense; the defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities. The Court thoroughly considered these factors at both the Sentencing Hearing and Resentencing Hearing, and its conclusions have not changed.[10]

As to the nature and characteristics of the offense, Turner was convicted of several very serious offenses: being a felon in possession of a firearm in a school zone; possessing with intent

---

[9] Turner having served approximately half of his sentence with little or no disciplinary issues does not constitute an extraordinary and compelling reason for his release. Generally, the Court may consider amount of time served as a part of its assessment of the sentencing factors. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). As is discussed *infra*, the sentencing factors, including the fact that approximately half of Turner's sentence remains to be served, do not weigh in favor of early release. In fact, the Court finds that failure to complete his sentence would lead to sentencing disparities amongst similar offenders.

[10] In fact, the Court felt so strongly about Turner's sentence, it found that a sentence of 382 months of imprisonment remained the appropriate sentence at the Resentencing Hearing despite the dismissal of Counts 1 and 2. The Court reasoned that because Counts 1 and 2 did not affect the Sentencing Guidelines range, dismissal of those Counts had no effect on the Court's previous determination that 382 months is an appropriate sentence. (Doc. 118.)

9

to distribute heroin; being a person under indictment in possession of a firearm and ammunition; and carrying and discharging a firearm during and in relation to a drug trafficking crime. In this case, the Court was particularly concerned that Turner recklessly fired two random shots in the air to ward off other drug dealers, which placed innocent lives in danger. (*See* Doc. 118.)

Turner also has significant prior criminal history, which the Court weighed heavily at the time of his Resentencing Hearing. The Court remains concerned with Turner being a repeat violent offender and drug offender and finds the need to protect the public from further crimes is high in this case. At the time of his Resentencing Hearing, the Court specifically noted that the Presentence Report reflected a long history of violence, association with drugs, and disrespect for the law. (*See* Doc. 118.) The Court considered Turner's juvenile adjudications for assault and menacing, as well as his many convictions as an adult, including: three convictions for resisting arrest, four adult convictions for obstructing official business, two convictions for assault, and one conviction for burglary. He also has a prior conviction for possessing a weapon under disability, and, on another occasion, the police discovered a 9 mm pistol in his car during a traffic stop. Although the Court was aware of Turner's challenging childhood and mental health difficulties, it found those factors did not justify a lesser sentence.

Based on the nature of the offense, the safety of the community is a high priority in this case. The Court remains concerned that Turner poses an ongoing risk to the community, particularly given his last offense placed innocent lives at risk and Turner has a long history of disregard for the law. Turner's sentence was thoroughly considered by the sentencing Judge. Releasing Turner early would undermine his sentence and create sentencing disparities amongst other similarly-situated offenders.

There is no justification for Turner's early release. The Court's evaluation of the sentencing factors has not changed since the time of his Resentencing Hearing. The Court stands behind the decision that Turner serve his justified sentence to completion.

IV. **CONCLUSION**

For the reasons stated herein, Turner's Motion for Compassionate Release and Supplemental Motion for Compassionate Release (Docs. 172, 182) are **DENIED**.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Susan J. Dlott
United States District Judge